**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALZHEIMER'S INSTITUTE** | : | **CIVIL ACTION** |
| **OF AMERICA, INC.** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **AVID RADIOPHARMACEUTICALS,** | : | **NO. 10-6908** |
| ***et al.*** | : | |

**MEMORANDUM OPINION**

Savage, J.                                               December 7, 2011

In this patent infringement action, the Bryan Cave attorneys representing the

plaintiff, Alzheimer's Institute of America, Inc. ("AIA"), filed a motion to withdraw after

learning that the University of South Florida Board of Trustees ("USF"), an intervenor in the

action, was currently represented by different attorneys at Bryan Cave in unrelated patent

prosecution and licensing matters.  USF refused to consent to Bryan Cave's continuing its

representation of AIA.

After a hearing on Bryan Cave's motion, we issued an order denying Bryan Cave's

motion.[1]  A written opinion was not issued at that time.[2]  We now issue this memorandum

opinion to explain our reasoning.

**Background and Procedural History**[3]

The patents in suit are for technology related to Alzheimer's disease, including

---

[1] *See* Order entered Nov. 1, 2011 (Doc. No. 131).

[2] After the order denying the motion to withdraw was entered, USF filed a motion for certification
pursuant to 28 U.S.C. § 1292(b) requesting the court to certify its order for review by the United States Court
of Appeals for the Federal Circuit.  *See* Doc. No. 137.

[3] A more detailed chronology of events in the development of the invention and the relationship of the
persons involved in the research is set forth in the Memorandum Opinion of August 31, 2011 (Doc. No. 88),
2011 WL 3875341.

nucleic acids coding for the so-called "Swedish mutation" and transgenic mice carrying the mutation.  Alzheimer's disease is the result of neuronal death believed to be caused by aggregations in the brain of plaques formed by a peptide known as beta-amyloid, which is released from a larger protein, the amyloid precursor protein ("APP").  A mutation in the APP gene, called the Swedish mutation, is believed to be the cause of the release of beta-amyloid plaques leading to Alzheimer's disease.

In 1992, Michael Mullan ("Mullan"), while employed by USF, discovered the "Swedish mutation."  The patent application for the Swedish mutation naming Mullan as the sole inventor was filed one month later, on June 4, 1992.  On July 15, 1992, Mullan executed an assignment to AIA of his rights in the invention, including any patents or continuations.  The assignment was recorded in the U.S. Patent and Trademark Office on July 31, 1992.

On October 3, 1995, the first of the patents in suit issued from the June 4, 1992 application as U.S. Patent No. 5,455,169 for a nucleic acid encoding an APP protein carrying the Swedish mutation, along with vectors comprising the nucleic acid and cell lines containing the nucleic acid.  On March 8, 2007, Mullan filed a continuation application, again naming himself as the sole inventor.  On May 26, 2009, the continuation application issued as U.S. Patent No. 7,538,258 for transgenic mice carrying the nucleic acid and for screening methods for an agent for treating Alzheimer's using such mice.  This patent was assigned to AIA pursuant to the original assignment.

On November 24, 2010, AIA, represented by Bryan Cave, brought this action alleging patent infringement by Avid Radiopharmaceuticals and The Trustees of the University of Pennsylvania.  After discovery limited to the issue of standing concluded, the

parties filed cross-motions for summary judgment.  The defendants contended that the assignor of the patents, Mullan, was not the sole inventor of the invention; and, even if he were, ownership of the invention vested in his university-employer USF by operation of Florida law.  AIA argued that Mullan was the sole inventor and the legal owner of the patents, giving rise to a presumption of validity of the patents.

We issued an opinion holding that pursuant to Florida law, the rights to the invention vested in USF because the purported inventor, Mullan, who had executed an assignment to AIA of his rights in the invention, was employed by USF at the time the invention was conceived and the invention was in the field or discipline of Mullan's employment.  Because we determined that there were contested material facts relating to whether USF had waived its ownership rights in the invention, we scheduled a trial on the waiver issue and on whether Mullan was the sole inventor.  USF then filed its motion to intervene, which we granted.

When USF sought to intervene in the action, Bryan Cave conducted a conflicts check.  It learned that USF was currently represented by different attorneys at Bryan Cave in unrelated patent prosecution and licensing matters.  When USF refused to consent to Bryan Cave's representation of AIA in this litigation, Bryan Cave filed a motion to withdraw as counsel.  After an evidentiary hearing, we entered an order, without opinion, denying Bryan Cave's motion to withdraw.[4]

After the order denying the motion to withdraw was entered, USF filed a motion for certification pursuant to 28 U.S.C. § 1292(b) requesting that the court certify its order for review by the United States Court of Appeals for the Federal Circuit.  We denied the

---

[4] *See* Order entered Nov. 1, 2011 (Doc. No. 131).

3

motion.

### Pennsylvania Law Applies

In a diversity action,[5] the court "must apply the choice of law rules of the forum state to determine what substantive law will govern." *Huber v. Taylor*, 469 F.3d 67, 73 (3d Cir. 2006) (quoting *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Accordingly, we turn to Pennsylvania's choice of law rules to determine the applicable law.

Local Rule of Civil Procedure 83.6, Part IV(B) states that the "Rules of Professional Conduct adopted by this court are the Rules of Professional Conduct adopted by the Supreme Court of Pennsylvania." Thus, the Pennsylvania Rules of Professional Conduct govern the conduct of attorneys appearing before this court.

On an issue involving a lawyer's professional responsibility while representing a client in a Pennsylvania court, the applicable choice of law rule is Rule 8.5 of the Pennsylvania Rules of Professional Conduct. This Rule states:

> (a) **Disciplinary Authority.** A lawyer admitted to practice in this jurisdiction is subject to the disciplinary authority of this jurisdiction, regardless of where the lawyer's conduct occurs. A lawyer not admitted in this jurisdiction is also subject to the disciplinary authority of this jurisdiction if the lawyer provides or offers to provide any legal services in this jurisdiction. A lawyer may be subject to the disciplinary authority of both this jurisdiction and another jurisdiction for the same conduct.

> (b) **Choice of Law.** In any exercise of the disciplinary authority of this jurisdiction, the rules of professional conduct to be applied shall be as follows:

> (1) **for conduct in connection with a matter pending before a tribunal, the rules of the jurisdiction in which the tribunal**

---

[5] Although this is not a diversity action, the issue of attorney conduct is a question of state, not federal law.

**sits shall be applied, unless the rules of the tribunal provide otherwise**; and

(2) for any other conduct, the rules of the jurisdiction in which the lawyer's conduct occurred, or, if the predominant effect of the conduct is in a different jurisdiction, the rules of that jurisdiction shall be applied to the conduct. A lawyer shall not be subject to discipline if the lawyer's conduct conforms to the rules of a jurisdiction in which the lawyer reasonably believes the predominant effect of the lawyer's conduct will occur.

(boldface added).

The explanatory comment to Rule 8.5 provides, in pertinent part:

2.  A lawyer may be potentially subject to more than one set of rules of professional conduct which impose different obligations. The lawyer may be licensed to practice in more than one jurisdiction with differing rules, or may be admitted to practice before a particular court with rules that differ from those of the jurisdiction or jurisdictions in which the lawyer is licensed to practice. Additionally, the lawyer's conduct may involve significant contacts with more than one jurisdiction.

3. Paragraph (b) seeks to resolve such potential conflicts. . . .

4. Paragraph (b)(1) provides that as to a lawyer's conduct relating to a proceeding pending before a tribunal, the lawyer shall be subject only to the rules of the jurisdiction in which the tribunal sits unless the rules of the tribunal, including its choice of law rule, provide otherwise. . . .

Thus, the plain language of Rule 8.5 and its explanatory comment clearly state that if the lawyer's conduct relates to a proceeding pending before a tribunal, the lawyer is "subject only to the disciplinary rules of the jurisdiction in which the tribunal sits." Because Bryan Cave's motion to withdraw pertains to a proceeding pending in this court and the Pennsylvania Rules of Professional Conduct govern this tribunal, Pennsylvania's Rules of Professional Conduct apply in this case.

An earlier version of Rule 8.5 further supports this interpretation.  Prior to 2004, Rule

8.5 provided that the applicable rules of professional conduct take into account the jurisdictions in which the attorney had been admitted to practice and in which he principally practiced.  It read:

> (1) [F]or conduct in connection with a proceeding in a court or agency before which a lawyer has been admitted to practice (either generally or for purposes of that proceeding), the rules to be applied shall be the rules of the jurisdiction in which the court or agency sits, unless the rules of the court or agency provide otherwise; and
>
> (2) for any other conduct. (i) if the lawyer is licensed to practice only in this jurisdiction, the rules to be applied shall be the rules of this jurisdiction, and (ii) if the lawyer is licensed to practice in this and another jurisdiction, the rules to be applied shall be the rules of the admitting jurisdiction in which the lawyer principally practices; provided, however, that if particular conduct clearly has its predominant effect in another jurisdiction in which the lawyer is licensed to practice, the rules of that jurisdiction shall be applied to that conduct.

Pa. Rules of Prof'l Conduct R. 8.5, adopted Oct. 16, 1987, as amended Aug. 14, 1996.

In contrast, under the current version of the Rule, amended April 30, 2004, if the lawyer's conduct relates to a proceeding pending before a tribunal, only the disciplinary rules of the jurisdiction in which the proceeding is pending are applied.  It does not matter if the attorney is admitted to practice in the jurisdiction where the matter is pending or is admitted elsewhere.

USF argued, for the first time at the hearing, that California's Rules of Professional Conduct apply because California is the state where Marshall, the attorney requesting to withdraw, is licensed to practice, and is the "home jurisdiction" of Marshall's firm, Bryan Cave.  It argued that California Rule of Professional Conduct 3-310 imposes a *per se* disqualification rule whenever a concurrent conflict is presented, whereas Pennsylvania

and Florida balance the various interests and hardships to the litigants, the public and the court.

Rule 3-310 of the California Rules of Professional Conduct states:

> (C) A member shall not, without the informed written consent of each client: (1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or (2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict; or (3) Represent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter.

USF is correct that California Rule of Professional Conduct 3-310 imposes a *per se* disqualification rule whenever a concurrent conflict is presented. *See Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 815 (N.D. Cal. 2004); *Responsible Citizens v. Superior Court*, 20 Cal. Rptr. 2d 756, 760 (Cal. Ct. App. 1993) (stating that a "per se or automatic disqualification rule applies when counsel's representation of one client is adverse to the interests of another *current* client).[6]

USF's reliance on the California rules is misplaced. California law does not apply. Pennsylvania law does.

In support of its argument that California's rules of professional conduct apply, USF

---

[6] USF inaccurately stated in its motion for certification that it had "noted in USF's Response to the Opposition of AIA to the Bryan Cave motion [that] California Rule of Professional Conduct 3-310 imposes a per se disqualification rule whenever a concurrent conflict is presented." USF Mot. at 3. In fact, USF made no mention of California's "per se disqualification" rule, and instead argued that the Pennsylvania Rules of Professional Conduct applied. *See* USF's Resp. to AIA's Mot. to Withdraw (Doc. No. 126) at 3 ("All of the attorneys in this case are subject to the Pennsylvania Rules of Professional Conduct. The specific rule implicated is Rule 1.7. . ."). The only references USF made to the California Rules of Professional Conduct were when it referred to Bryan Cave's general counsel's citation to Rule 3-310 as the reason for its seeking consent from USF to waive the conflict, and when USF stated that Bryan Cave "is subject, according to its own analysis, to the California Rules of Professional Conduct." (*See* Doc. No. 126 at 2 n.1, 6-7). USF first raised the California "per se disqualification" rule at oral argument on the motion to withdraw.

cites *Action Air Freight, Inc. v. Pilot Air Freight Corp.*, 769 F. Supp. 899 (E.D. Pa. 1991) as standing for the proposition that Pennsylvania's rules merely "supplement" California's rules.   To the contrary, the court in *Action Air* rejected the argument that an attorney licensed to practice law in California but practicing outside the state was subject to the California Rules of Conduct.   *Id.* at 902.   The court noted that California's Rule 1-100 recognizes that different rules of conduct observed by outside jurisdictions may govern the conduct of attorneys licensed in California but practicing outside the state.   Because the attorney represented a client from Pennsylvania in an arbitration proceeding in Pennsylvania, the court held that Pennsylvania's professional rules governed counsel's conduct.   *Id.*

USF's arguments that Marshall's primary jurisdiction of practice is California and that his firm's "home jurisdiction" is California are irrelevant.[7]   Pennsylvania's rules of professional conduct apply.

### Pennsylvania's Standard on Withdrawal

Local Rule of Civil Procedure of the Eastern District of Pennsylvania 5.1(c), formerly Rule 18(c), provides that an "attorney's appearance may not be withdrawn except by leave of court, unless another attorney of this Court shall at the same time enter an appearance for the same party."   Comments to the former rule suggest four factors to weigh in considering whether to grant a motion to withdraw: (1) the reason why withdrawal is sought; (2) the prejudice withdrawal may cause to litigants; (3) the harm withdrawal might cause to the administration of justice; and (4) the degree to which withdrawal will delay resolution

---

[7] See USF's Motion to Certify (Doc. No. 137) at 3, 6.  Even if these issues were relevant, USF is incorrect about Bryan Cave's "home state."  Bryan Cave is headquartered in St. Louis, Missouri, not California.

of the case.  *Taylor v. Stewart*, 20 F. Supp. 2d 882, 883 (E.D. Pa.1998) (citing *Crestar*

*Mortg. Corp. v. Peoples Mortg. Co.,* No. 91-7990, 1995 WL 695093 (E.D. Pa. Nov. 15,

1995) (Pollak, J.))).  Whether to permit an attorney to withdraw must be determined with

reference to the purpose underlying Local Rule 5.1, which includes "ensuring effective

court administration."  *Ohntrup v. Firearms Ctr., Inc.*, 802 F.2d 676, 679 (3d Cir. 1986).

Pennsylvania Rules of Professional Conduct 1.7 and 1.16 are relevant to Bryan

Cave's motion to withdraw.  Rule 1.7, which addresses a concurrent conflict of interest,

provides:

> (a) Except as provided in paragraph (b), a lawyer shall not
> represent a client if the representation involves a concurrent
> conflict of interest. A concurrent conflict of interest exists if:
>
> (1) the representation of one client will be directly adverse to
> another client; or
>
> *          *          *
>
> (b) Notwithstanding the existence of a concurrent conflict of
> interest under paragraph (a), a lawyer may represent a client
> if:
>
> (1) the lawyer reasonably believes that the lawyer will be able
> to provide competent and diligent representation to each
> affected client;
>
> (2) the representation is not prohibited by law;
>
> (3) the representation does not involve the assertion of a claim
> by one client against another client represented by the lawyer
> in the same litigation or other proceeding before a tribunal; and
>
> (4) each affected client gives informed consent.

Pa. Rules of Prof'l Conduct R. 1.7.

The comment to Rule 1.7 states:

[6] . . . . [A]bsent consent, a lawyer may not act as an advocate in one matter against a person the lawyer represents in some other matter, even when the matters are wholly unrelated. The client as to whom the representation is directly adverse is likely to feel betrayed, *and* the resulting damage to the client-lawyer relationship is likely to impair the lawyer's ability to represent the client effectively. In addition, the client on whose behalf the adverse representation is undertaken reasonably may fear that the lawyer will pursue that client's case less effectively out of deference to the other client, i.e., that the representation may be materially limited by the lawyer's interest in retaining the current client. Similarly, a directly adverse conflict may arise when a lawyer is required to cross-examine a client who appears as a witness in a lawsuit involving another client, as when the testimony will be damaging to the client who is represented in the lawsuit.

Pa. Rules of Prof'l Conduct R. 1.7, cmt. 6 (emphasis added).

Despite the mandate that an attorney must withdraw from representing a client in the face of a conflict prohibited by rules of professional conduct, the attorney may be required to continue the representation by order of the court. Pennsylvania Rule of Professional Conduct 1.16 provides, in pertinent part:

(a) . . . a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:

(1) the representation will result in violation of the Rules of Professional Conduct. . . .

*     *     *

b) Except as stated in paragraph (c), a lawyer may withdraw from representing a client if:

(1) withdrawal can be accomplished without material adverse effect on the interests of the client;

*     *     *

(c) . . . . When ordered to do so by a tribunal, a lawyer shall

10

> continue representation notwithstanding good cause for
> terminating the representation.

Therefore, under Rule 1.16(c), the court can order a lawyer to continue to represent a client even if doing so would otherwise violate a disciplinary rule. Pa. Rules of Prof'l Conduct R. 1.16(c).

In summary, the Pennsylvania standard calls for a balancing of the concerns addressed in Local Rule 5.1(c) and Pennsylvania Rules of Professional Conduct 1.7 and 1.16 to determine whether good cause exists to permit the withdrawal. The factors to weigh include the potential prejudice that the proposed withdrawal will cause the clients, lawyers and the other parties to the lawsuit, the delay to the proceedings and the harm to the administration of justice.

## Pennsylvania's Standard on Disqualification

Bryan Cave's motion is, in effect, a motion to disqualify because it is implicitly asking to be disqualified. If Bryan Cave had not moved to withdraw, USF would no doubt have filed a motion to disqualify the firm from representing AIA in this litigation.

"The district court's power to disqualify an attorney derives from its inherent authority to supervise the professional conduct of attorneys appearing before it." *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir.1980) (citations omitted). However, "motions to disqualify are an 'extreme sanction' that should not be imposed lightly." *Martin v. Turner*, No. 10-1824, 2011 WL 717682, at *2 (E.D. Pa. Feb. 18, 2011) (Padova, J.) (citations omitted); *see also Wyeth v. Abbott Labs.*, 692 F. Supp. 2d 453, 457 (D.N.J. 2010) ("'[D]isqualification is considered a 'drastic measure which courts should hesitate to impose except when absolutely necessary.'") (citations omitted). "[M]otions to disqualify opposing

counsel are disfavored . . . not only because disqualification robs one's adversary of her counsel of choice, but also because of the risk . . . that one could subvert the ethical rules in an attempt to use them as a procedural weapon." *Martin*, 2011 WL 717682, at *2 (citing *Wolf, Block, Schorr & Solis-Cohen LLP v. Navon*, No. 05-6038, 2006 WL 680915, at *1 (E.D. Pa. March 9, 2006) (Dalzell, J.)); *see also* Pa. Rules of Prof'l Conduct, Scope ¶ 19 ("[T]he purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons."); *Caracciolo v. Ballard*, 687 F. Supp. 159, 160-61 (E.D. Pa. 1988) ("The Code of Professional Responsibility is applied to deter professional misconduct, and to preserve the profession's standing in the community -- it was not intended as an addition to the depressingly formidable array of dilatory strategies already part of the litigator's arsenal.").

The disqualification analysis is based on the Pennsylvania Rules of Professional Conduct. *See, e.g., Martin*, 2011 WL 717682, at *2-3; *Furey v. Wolfe*, No. 10-1820, 2011 WL 1672037, at *2-3 (E.D. Pa. May 3, 2011) (Hey, M.J.). "'[D]isqualification ordinarily is the result of a finding that a disciplinary rule prohibits an attorney's appearance in a case,' and, even upon such a finding, 'disqualification never is automatic.'" *Martin*, 2011 WL 717682, at *2 (quoting *Miller*, 624 F.2d at 1201). Thus, "the court should disqualify an attorney only when it determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule." *Miller*, 624 F.2d at 1201. In making this determination, we "consider the ends that the disciplinary rule is designed to serve and any countervailing policies, such as permitting a litigant to retain the counsel of his choice and enabling attorneys to practice without excessive restrictions." *Id.* (citations omitted).

12

The main difference between the standard on a motion to withdraw and a motion for disqualification is that in the latter, there is a concern that the movant is asking for disqualification as a "procedural weapon."[8]

## Balancing of the Factors on the Motion to Withdraw

### *The Reason for the Withdrawal*

Bryan Cave moves to withdraw as counsel because there is an actual concurrent conflict of interest between two current clients of Bryan Cave. Both USF and AIA assert that they each separately own the patents in suit. Ed Hejlek, a Bryan Cave attorney, currently represents USF in patent prosecution matters that have no connection to Alzheimer's disease. He had been representing USF before joining Bryan Cave in 2008 and has continued to do so. (Transcript of Oct. 31, 2011 Hearing ("Tr.") at 12, 54-55)

Under both California's and Pennsylvania's rules of professional conduct, a lawyer may not represent one client whose interest is directly adverse to another client's without the consent of each client. USF refused to give its consent to Bryan Cave to continue

---

[8] USF argued in its motion for certification that it cannot "identify a single controlling precedential case where the district court has compelled a law firm against its will to continue to represent a client in the face of a concurrent conflict with another client to the same litigation." Mot. for Cert. (Doc. No. 137) at 2, 3. Yet, a Florida district court, which USF cited in its motion to certify, *see id.* at 2, n.1, refused to compel an attorney to withdraw in an almost identical factual scenario. *Prudential Ins. Co. of Am. v. Anodyne, Inc.*, 365 F. Supp. 2d 1232 (S.D. Fla. 2005). Though not binding on us, *Prudential* is instructive because Florida's Rule of Professional Conduct 4-1.7, the equivalent of Pennsylvania's Rule of Professional Conduct 1.7, is virtually identical to Pennsylvania's rule.

In *Prudential*, in refusing to compel an attorney to withdraw in a case presenting similar facts to our case, the court employed a balancing test, weighing factors such as the nature of the ethical violation, prejudice to the parties, effectiveness of counsel in light of the violation, the public's perception of the profession, and whether the attempt to disqualify was used as a tactical device or to harass. 365 F. Supp. 2d at 1237. Even though the court found that the law firm was violating a conflict of interest rule regarding concurrent representation of adverse clients, it declined to compel the law firm to withdraw. *Id.* at 1238. It reasoned that the law firm's disqualification was not mandatory because the purposes behind Rule 4-1.7(a) -- to protect client confidences and safeguard loyalty as a feature of the attorney-client relationship -- would not be compromised by refusing to allow the law firm to withdraw from representation, the representations involved entirely unrelated matters, and the attorneys within the firm had not shared any information regarding their respective clients with each other. *Id.* at 1238-40.

representing AIA in these matters.  Bryan Cave then filed its motion to withdraw because the attorneys believed they had an obligation to do so under the California and the ABA rules of professional conduct.  Marshall explained that he moved to withdraw "because [he] ha[d] to, not because [he] want[ed] to."  (Tr. at 2, 3, 52)

*Prejudice to AIA*

Bryan Cave has served as counsel to AIA for more than two and a half years and is thoroughly familiar with the case.  It has expended substantial time representing AIA. If Bryan Cave is permitted to withdraw as counsel, AIA will have extraordinary difficulty in finding replacement counsel, duplicative work will have to be done to prepare new counsel, and AIA will incur inordinate expense.

Specifically, for more than two and a half years, Bryan Cave has represented AIA in four separate patent infringement suits against twelve defendants pertaining to the patents at issue in this case.  Three of those lawsuits are still pending.[9]  Bryan Cave's lawyers have spent more than 7,200 hours representing AIA in these litigations.  (Tr. at 56-58)

Three attorneys comprise the "core" team of Bryan Cave attorneys on these matters: Lee Marshall and Berrie Goldman,[10] who operate out of the San Francisco office, and Ameer Gado,[11] whose office is in St. Louis.  Another lawyer, Benjamin Sodey,[12] who works out of Bryan Cave's St. Louis office, has performed 28 hours of work on this case,

---

[9]  The pending cases are in the Western District of Oklahoma, the Middle District of Florida and the Northern District of California.  They have been stayed pending the verdict in this case on the standing issue.

[10]  Goldman has a degree in biomedical physics.  (Tr. at 57)

[11]  Gado has a degree in biology.  *Id.*

[12]  Sodey has a degree in biochemistry.  *Id.*

and between 400 to 500 hours in total on all AIA matters.  His area of focus has been primarily claims construction. (Tr. at 53-54, 57)

Marshall has been the lead attorney on all four AIA matters, spending one-third to one-half of his time working on these cases.  Over the past two and half years, he has had frequent and lengthy contact with Ronald Sexton, AIA's president, and is primarily the only member of his firm who contacts him.  (Tr. at 58-59)   Similarly, he has spoken and met with Mullan extensively to ensure he was producing all of the relevant documents, to consult about some of the scientific issues in the case, and to understand the facts of the case, including the waiver issue.  (Tr. at 68-69) Marshall and his team have reviewed and studied tens of thousands of pages of documents that have been produced by all parties in this and the related cases.  Marshall has participated in all of the depositions that have been taken in these cases.  (Tr. at 59-61)

Marshall opined that it will be very difficult to replace him.  His preparation for and presence at the depositions provided him with invaluable experience and familiarity with the issues in this case.  Having invested significant time and effort in the cases, he understands the issues.  He has a strong scientific background, a good relationship with the client and experience trying cases.  (Tr. at 61-62)

Sexton testified that his and AIA's relationship with Marshall and Bryan Cave is unique.  He cited Marshall's expertise in technology and science, his efficiency, his understanding of the facts and the law, and the large number of hours he has spent with Mullan to learn the facts and the science.  Sexton articulated that if AIA is forced to retain new counsel, Mullan will have to spend an inordinate amount of time educating new counsel about the facts and the science of the case to get them up to speed.

Sexton is having difficulty finding a new lawyer.  He contacted and interviewed seven lawyers.  Five were conflicted out because they represented a defendant in one of the AIA proceedings.  One has no biology expertise.  (Tr. at 98-102, 107-111)

*Prejudice to USF*

USF expressly concedes that it cannot identify "any specific or material harm that USF has suffered or will suffer" as a result of Bryan Cave continuing to represent AIA in these patent infringement actions.  The harm and prejudice it "perceives that it has suffered and will suffer" if Bryan Cave continues to represent AIA is a feeling of betrayal by Bryan Cave, a "loss of loyalty of its counsel and the erosion of its confidence that Bryan Cave will represent USF to the best of Bryan Cave's abilities."  (USF Stipulation, ¶1; Tr. at 5, 11, 31)

The perception of betrayal alone does not require withdrawal.  As the comment to Pennsylvania Rule of Professional Conduct 1.7 explains, the damage to the attorney-client relationship must likely "impair the lawyer's ability to represent the client effectively."  Pa. Rules of Prof'l Conduct R. 1.7, cmt. 6.  This possibility does not exist.  USF has made it clear that Bryan Cave will no longer represent it in any matter.  (Tr. at 4, 11)

USF stipulated that Bryan Cave did not and will not receive any confidential information from USF as a result of its representation of USF that would be relevant or material to this case.   (USF Stipulation, ¶ 3; Tr. at 31)  Indeed, the matters in which Bryan Cave is representing and has represented USF are unrelated to this litigation or any other litigation brought by AIA.  (USF Stipulation, ¶ 2)

Marshall testified as to the ethical screens Bryan Cave had implemented before USF moved to intervene.  On September 28, 2010, a "Hejlek screen" was established pursuant to a patent prosecution bar that arose from a protective order in the *CoMentis* AIA

16

litigation in Oklahoma.[13]  A patent prosecution bar is set up in patent litigation to be sure that research and development documents disclosed in the course of litigation are not used or seen by attorneys who are engaged in patent prosecution in the same area.  Because Hejlek was engaged in patent prosecution in the Alzheimer's area (but not in these matters and not on behalf of USF), he was formally screened from all AIA litigation.  Consequently, since September of 2010, all of the members of the Bryan Cave AIA team were instructed that Hejlek was not to have any contact with the AIA files.  In addition, Hejlak has been screened from the legal key document retention database, attorneys are not permitted to discuss the litigation with Hejlek, and attorneys working on the litigation could not be involved in or discuss any patent prosecution involving Alzheimer's disease.  (Tr. at 71-74)

Sodey, who came to Bryan Cave with Hejlak in 2008, was not screened.  Unlike Hejlak, Sodey had not seen any documents that would have subjected him to the patent prosecution bar because he had not worked on any Alzheimer's disease-related patent prosecutions.  (Tr. at 80-81)  Because he had experience in patent prosecution, the AIA litigation team asked Sodey to assist them in claims construction issues in the AIA litigation.  (Tr. at 54, 77)  Sodey is no longer needed for the USF patent prosecution work nor for the AIA Alzheimer's litigation.  Accordingly, he can be screened from both matters and both clients.  (Tr. at 122)

AIA did not intentionally cause the conflict.  In 2002, AIA made a claim of patent infringement of the patents in suit against USF through letters sent by counsel (Lathrop and Gage, not Bryan Cave) for AIA to USF.  Conducting a search, USF employees did not identify any documents regarding the inventions at issue, the circumstances under which

---

[13] *AIA v. CoMentis, Inc. and Oklahoma Medical Research Fdtn.*, W.D. Ok., Civ. A. # 09-1366.

they were made, or a waiver of USF's rights in and to the patents in suit.  The only defense USF asserted was based on sovereign immunity, not on ownership of the inventions. McDevitt Decl., ¶¶ 3-7, Ex. A to USF Stip.; Tr. at 32-37, 39-42; *see also* July 31, 2002 letter from Steven Kelber to William Rudy (Lathrop & Gage), USF Stip, Ex. C, attachment 6.  In response to AIA's clear claim that it was the owner of the subject patents, Kelber asserted that AIA and Mullan had no claim against USF based on sovereign immunity and that USF's activities fell outside the scope of the claimed patents.  He did not contend USF had any right to the patents.  Thus, because USF never claimed ownership of the inventions, it was reasonable for Bryan Cave to believe that there was no conflict with USF and no need to run a conflict check as to USF when it brought the patent infringement actions. USF's potential interest did not become apparent until our ruling on the cross-motions for summary judgment.

### *Potential Delay*

Given the complexity of the science and the extensive discovery, new counsel would require several weeks, if not months, to familiarize themselves with the case and to prepare for trial.  Any resulting delay would not be the fault of the parties.

### *Harm to the Administration of Justice*

Allowing Bryan Cave to withdraw will disrupt the flow of the litigation.  The resolution of the waiver issue will impact this litigation and the pending cases in the other jurisdictions. The other courts are awaiting the outcome of the trial on waiver and inventorship in this case.  Delaying the trial scheduled for April will cause harm to the administration of justice.

### Conclusion

Even though Bryan Cave's remaining as counsel would otherwise violate California's concurrent conflict rule, this court's local rule and the Pennsylvania Rules of Professional Conduct permit the court to order AIA's lawyers to remain in the case.  After balancing all interests, especially those of USF, we conclude that Bryan Cave and its attorneys may continue to represent AIA at least through the trial on the waiver issue.