# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ALZHEIMER'S INSTITUTE OF AMERICA, INC. | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
| AVID RADIOPHARMACEUTICALS, et al. | : | NO. 10-6908 |

## MEMORANDUM OPINION

Savage, J.                                                                               July 1, 2013

In this patent infringement action, the University of South Florida Board of Trustees ("USF") moves, pursuant to Federal Rule of Civil Procedure 15(b)(2), to amend the pleadings to conform to the evidence and allow it to plead the counterclaim that it had submitted with its motion to intervene in the action. In the proposed counterclaim, USF requests a declaration that USF owns the two patents-in-suit and two related patents owned by Alzheimer's Institute of America ("AIA"). In the present motion, USF seeks an order "entering" the counterclaim *and* directing AIA to "execute an assignment" of the two patents-in-suit and two related patents to USF.

Contrary to USF's contention, its ownership interest, if any, in the patents was not fully litigated by the express or implied consent of the parties as required by Rule 15(b)(2). Allowing a post-trial amendment would prejudice AIA. Therefore, USF's motion for leave to amend shall be denied.

## Procedural and Factual Background

AIA brought this action against defendants Avid Radiopharmaceuticals ("Avid") and The Trustees of the University of Pennsylvania ("Penn"), alleging that the defendants

infringed two patents that issued off the patent application for the so-called "Swedish mutation" invention that Michael Mullan assigned to AIA in 1992.[1] Because the defendants raised the issue of AIA's standing, we decided to resolve AIA's standing before reaching the infringement issue. After discovery limited to the issue of whether AIA had standing to bring the action was concluded, Avid and Penn moved for summary judgment, contending that the assignor of the patents, Mullan, was not the sole inventor; and, if he were, ownership of the invention vested in his university-employer, USF, by operation of Florida law.[2] AIA countered that Mullan was the sole inventor and the legal owner of the patents, giving rise to a presumption of validity of the patents.

Ruling on the cross-motions, we issued a memorandum opinion ("August 31, 2011 Opinion")[3] and an order holding that pursuant to Florida law, the rights to the invention vested in USF because the purported sole inventor, Mullan, who had executed an assignment to AIA of his rights in the invention, was employed by USF at the time the invention was conceived and the invention was in the field or discipline of Mullan's employment. Because there were contested material facts on the inventorship issue, we ordered a trial on the issues of whether USF had waived its ownership rights in the invention and whether Mullan was the sole inventor.

USF subsequently filed a motion to intervene, requesting that it be allowed to "assert

---

[1] The patent application for the Swedish mutation named Mullan as the sole inventor and was filed on June 4, 1992. On July 15, 1992, Mullan executed an assignment to AIA of his rights in the invention, including any patents or continuations. The assignment was recorded in the U.S. Patent and Trademark Office on July 31, 1992.

[2] Avid argued in the alternative that Imperial College in London owned the rights to the inventions because Mullan was a student and an employee of Imperial when the inventions were conceived.

[3] Memorandum Opinion (Doc. No. 88) (Aug. 31, 2011).

2

and defend its ownership interests in the patents at issue" and in two related patents owned by AIA, and to plead a counterclaim asserting those interests.[4] The proposed counterclaim alleged that USF owned the four patents that issued off the patent application for the Swedish mutation, and it had legal title to the four patents.[5] In its motion, USF characterized the August 31, 2011 Opinion as finding that "title in the patents-in-suit vested in USF."[6] It argued that the only remaining issue as to ownership of the patents was a contested issue of fact as to whether USF had effectively waived its rights in the patents.

Granting USF's motion in part, we ruled that USF could intervene, but only with respect to "the issue of whether or not it waived its rights in the invention claim by Michael J. Mullan as his own which is claimed in U.S. Patent Nos. 5455169 and 7538258." We specifically denied the motion "to intervene for any other purpose."[7]

Relying on Federal Rule of Civil Procedure 15(b)(2), USF moved, immediately after the jury's verdict, to amend the pleadings to "enter its counterclaim." In essence, USF seeks a declaratory judgment directing AIA to "execute an assignment" of the two patents and two related patents to USF.[8] It argues that because the issue whether USF is the legal and equitable owner of the patents has been fully litigated with the express consent of all

---

[4] Mot. of USF to Intervene (Doc. No. 92) at 1, 3.

[5] Specifically, the proposed counterclaim stated that "[l]egal title in and to U.S. Patent Application Serial Number 07/894,211, and any patent to issue thereon, vested in USF," and that "legal title to U.S. Patent No[s]. 5,455,169[; 5,795,963; 6,818,448; and 7,538,258] resides in USF." Proposed Counterclaim, ¶¶ 6, 8-9, 14, 16-18.

[6] Mot. of USF to Intervene at 2. USF quoted the following portion of the opinion: "Therefore, because Mullan was employed by USF when the inventions related to the patents in suit were conceived and the inventions were within the field in which Mullan was employed by USF, rights to the patents-in-suit vested immediately in USF by operation of the Florida regulation." *Id.* (quoting August 31, 2011 Opinion at 15-16).

[7] Order (Doc. No. 122) (Oct. 20, 2011).

[8] Mot. to Amend the Pleadings (Doc. No. 276) at 1, and proposed order accompanying motion.

3

parties, the amendment to add USF's counterclaim will conform the pleadings to the evidence.

## Discussion

Federal Rule of Civil Procedure 15(b)(2) provides, in pertinent part, that

> [w]hen an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move – at any time, even after judgment -- to amend the pleadings to conform them to the evidence and to raise an unpleaded issue.

To determine whether an issue was tried by implied consent, we look to three factors: (1) knowledge – whether the parties recognized that the unpleaded issue was in the case at trial; (2) acquiescence – whether the opposing party acquiesced to trying the issue by failing to object to the evidence supporting the unpleaded issue that was introduced at trial; and (3) prejudice – whether the opposing party's opportunity to respond to the issue was prejudiced. *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 676 F.3d 318, 326-28 (3d Cir. 2012); *see also Evans Prods. Co. v. West Am. Ins. Co.*, 736 F.2d 920, 924 (3d Cir. 1984) ("The primary consideration in determining whether leave to amend under Fed. R. Civ. P. 15(b) should be granted is prejudice to the opposing party." (citation omitted)). The principal test for prejudice when a party seeks to assert a new theory "is whether the opposing party was denied a fair opportunity to defend and to offer additional evidence on that different theory." *Evans*, 736 F.2d at 924 (citation omitted).

USF argues that the issue of whether "USF is the legal and equitable owner of the patents in suit has been fully litigated with the express consent of all parties."[9] It contends

---

[9] *Id.* at 2.

4

that Avid and Penn "raised the issue of USF's ownership and waiver in its original pleadings [and that] AIA responded to those pleadings without objecting."[10] USF contends that when ruling on the summary judgment motions, we determined that if a jury were to find that USF had not waived its rights, USF "holds equitable and legal title to the patents."[11] USF cites the following excerpt from the opinion:

> [B]ecause the Florida regulation vested ownership of the patents in suit in USF, Mullan had no rights to assign to AIA, unless USF had waived its ownership rights.[12]

Relying on this excerpt, USF argues that "at least as of August 31, 2011 the parties were put on notice that if there was no waiver, USF rightfully holds equitable and legal title to the patents in suit."[13]

Additionally, USF argues that the "opening words of the Court's charge to the jury confirm" that USF was and is the rightful owner of the patents. In its charge to the jury, the court stated that "[t]his case is about who owns the rights to two patents for technology related to research of Alzheimer's disease."[14] USF argues that now that the jury has found

---

[10] Id.

[11] Id.

[12] Id. (quoting Aug. 31, 2011 Opinion at 20-21). On this and one other occasion in the opinion, we mistakenly referred to USF's ownership rights in the *patents* instead of ownership rights in the *invention*. See Opinion at 15-16 ("Therefore, because Mullan was employed by USF when the inventions related to the patents in suit were conceived and the inventions were within the field in which Mullan was employed by USF, rights to the patents-in-suit vested immediately in USF by operation of the Florida regulation."). Ignoring the multitude of times we referred to USF's ownership rights in the invention, USF has apparently seized on these two misstatements to assert that we held that it held ownership rights to the patents.

[13] Id. at 2.

[14] 4/20/12 Tr. at 10:10-14. However, that was followed by the statements: "*AIA contends* that it *owns* the patents;" Avid and Penn and USF "contend that AIA has no rights to the patents;" and "*USF asserts* that it *owns* the *invention*." Id. at 11:2-10 (emphases added). Thus, it is clear that the court was stating that at issue were *AIA's ownership* rights to the *patents* and *USF's ownership* rights to the *invention*.

5

that USF did not waive its rights, after AIA has had a "full and complete opportunity to offer evidence and defend its position on waiver," we should allow the counterclaim.[15]

AIA opposes USF's motion for several reasons. First, it contends that there is nothing to amend because USF's proposed counterclaim was expressly not allowed. Second, it denies that it ever consented to litigating the issue of patent ownership, as demonstrated by its opposition to USF's motion to intervene ("AIA opposes USF's motion to intervene . . . only insofar as may be necessary to preserve AIA's opposition to USF's counterclaim for declaration of patent ownership.").[16] Third, it contends that it would suffer prejudice if USF's amendment were permitted because it was precluded at trial from asserting the defenses of equitable estoppel and laches. At trial, we specifically denied AIA's request to instruct the jury on equitable estoppel because it was not relevant to the only issue being tried – whether AIA could bring an action against Avid and Penn for infringement. Finally, AIA argues that the jury's finding that John Hardy is a co-inventor precludes a finding that legal and equitable title to the patents resides in USF, which is the relief that USF seeks in its amendment.[17]

We shall deny USF's motion because the issue of USF's ownership interest in the patents has not been fully litigated by the express or implied consent of the parties, AIA

---

[15] Mot. to Amend the Pleadings at 3.

[16] Pl.'s Limited Opp'n to USF's Mot. to Intervene (Doc. No. 113) at 1.

[17] USF contends that because AIA's claims have been dismissed against Avid and Penn, and neither Avid nor Penn own, or claim to own, any rights in the patents, they lack standing to oppose USF's motion to amend. USF argues that because judgment has been entered in their favor, Avid and Penn are facing no "threat" of a claim of infringement under the patents. Consequently, according to USF, without a legally protected interest in the patents or in their potential assignment to USF, Avid and Penn should not be permitted to contest USF's motion. Reply of USF to Defs.' Opp'n to Mot. to Amend (Doc. No. 298) at 2-3. Because we agree with AIA's reasoning in opposing USF's motion, we do not consider Avid and Penn's opposition.

6

would be prejudiced by the belated amendment, and the proposed amendment does not conform to the evidence at trial.

First, AIA did not give its express or implied consent to try the issue of USF's ownership rights in the patents. On the contrary, AIA specifically objected to litigating the issue of USF's patent ownership in its opposition to USF's motion to intervene. ("AIA opposes USF's motion to intervene . . . only insofar as may be necessary to preserve AIA's opposition to USF's counterclaim for declaration of patent ownership.").[18]

Second, AIA would be prejudiced if USF's counterclaim were now permitted. At trial, AIA was explicitly precluded from asserting defenses to the proposed counterclaim. Prior to trial, USF filed a motion in limine seeking to preclude AIA from raising the affirmative defense of equitable estoppel. In response, AIA argued that it was "entitled to raise an equitable estoppel defense to USF's claim of no waiver and present argument and evidence on this defense at trial."[19] AIA also requested that we charge the jury on equitable estoppel.[20] We deferred a ruling on USF's motion in limine until after the close of all the evidence. The issue was raised again at the charging conference, with AIA arguing for and USF arguing against an equitable estoppel charge. We declined to give the instruction, stating that the issue of equitable estoppel is:

> not relevant to the issue of standing. It may be relevant to any claims that USF may have against AIA, but that is not what we are trying in this case. It's whether AIA can bring an action against Avid and Penn for infringement. That is all we are

---

[18] Pl.'s Limited Opp'n to USF's Mot. to Intervene at 1.

[19] AIA's Memo. in Opp'n to USF's Mot. in Limine to Preclude AIA from Introducing at Trial Argument or Evidence to Assert the Affirmative Defense of Equitable Estoppel (Doc. No. 224) at 4.

[20] Pl.'s Proposed Jury Instructions (Doc. No. 238-1) at 19-21.

7

> trying in this case. You might have that argument somewhere down the line, but not here. That is my ruling. I will not be charging on it.[21]

Indeed, throughout the trial, AIA sought to introduce evidence bearing on USF's failure to assert its ownership claim for years and its acknowledging that Mullan and/or AIA held title to the invention. Its efforts were rejected. Thus, because the jury was not permitted to consider and determine AIA's defenses in this trial concerning USF's claims of ownership of the patents against AIA, allowing the amendment post-trial would prejudice AIA.

Finally, the proposed amendment does not conform to the evidence at trial. As already explained, we limited the triable issue to whether AIA had standing to bring a claim for infringement against Avid and Penn. Significantly, the relief that USF seeks in its proposed amendment – that legal and equitable title to the patents resides in USF – cannot be granted because the jury found that Hardy is a co-inventor of the invention claimed in the patents. Because the jury did not determine who, including USF, owned the *patents*, we cannot now declare that USF is the owner of all rights, title and interest to the patents.

---

[21] 4/18/12 Tr. at 339:18-340:3, 349:6-15.